UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| GREGORY GURROLA,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 13-1966 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are summarized in the joint stipulation and are undisputed. [JS 2]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") concluded that plaintiff was not disabled because he did not have a severe impairment or combination of impairments. [AR 9-16].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.

2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

Plaintiff contends that in finding no severe physical impairment, the ALJ erred in evaluating the medical evidence and the credibility of plaintiff's subjective complaints.

A medically determinable impairment or combination of impairments is not severe if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2006) (quoting Smolen v. Chater, 80 F.3d 1273, 1289-1290 (9th Cir. 1996)). To assess severity, the ALJ must determine whether a claimant's impairment or combination of impairments significantly limits his or her physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a); see Webb, 433 F.3d at 686. Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b). The ALJ is required to consider the claimant's subjective symptoms in making a severity determination if the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." SSR 96-3p, 1996 WL 374181, at *2. The absence of a severe impairment must be "clearly established by medical evidence."

1   Webb, 433 F.3d at 687 (quoting SSR 85-28).

2         The ALJ found that plaintiff had severe impairments consisting of Wegener's granulomatosis[1]
3   ("Wegener's") and deep vein thrombosis ("DVT")[2] of both lower extremities, but that those impairments
4   were not severe, singly or in combination.  [AR 11-15].  The ALJ noted that plaintiff had multiple
5   hospitalizations for Wegener's and DVT in late 2007 and early 2008, but concluded that plaintiff's condition
6   resolved or was improved on discharge.  The ALJ also concluded that plaintiff's medical records for 2009,
7   2010, and 2011 indicated that his Wegener's and DVT were stable, that he was able to exercise actively on
8   his doctors' advice after a period of deconditioning following his hospital stays, and that certain diagnostic
9   tests were within normal limits. [AR 13-14]. The ALJ acknowledged that plaintiff was again hospitalized
10  in January 2012, for infectious pharyngitis and sinusitis, but noted that the assessment was negative for a
11  flare-up of Wegener's, and that he had only vague or mild complaints on follow-up visits in February and
12  March 2012. [See AR 13].  The ALJ also concluded that the treatment records showed no objective evidence
13  of a severe musculoskeletal disorder, that plaintiff's vision problems resolved after cataract surgery, and that

---

[1]  Wegener's granulomatosis, also known as granulomatosis with polyangiitis, is a rare autoimmune disorder in which blood vessels become inflamed and restrict blood flow to various organs, which can damage them.  It affects mainly blood vessels in the nose, sinuses, ears, lungs, and kidneys, but other organs may also be affected. It also produces a type of inflammatory tissue known as a granuloma, which can destroy normal tissue.  The exact cause of Wegener's granulomatosis is unknown. Early symptoms of Wegener's granulomatosis usually involve the respiratory tract, but the condition may worsen rapidly.  Signs and symptoms include frequent sinusitis, chronic ear infections, nosebleeds, fever, cough, chest pain, a general feeling of illness or malaise, loss of appetite, weight loss, joint aches and swelling, blood in the urine, skin sores, eye redness, swelling, or pain, eye may occur. The condition may resolve with early diagnosis and appropriate treatment, but maintenance therapy may be required, and the disease can recur. See Mayo Clinic website, http://www.mayoclinic.org/diseases-conditions/wegeners-granulomatosis/basics/definition/con-20028113 (last visited Sept. 22, 2014); Medline Plus website, National Library of Medicine and National Institutes of Health, *http://www.nlm.nih.gov/medlineplus/ency/article/*000135.htm (last visited Sept. 22, 2014).

[2]  DVT is a blood clot that forms in a vein deep in the body, such as the lower leg or thigh.  A blood clot in a deep vein can break off and travel through the bloodstream.  It may travel to an artery in the lungs and block blood flow.  DVT may be treated with medicines, most commonly anticoagulants, and with other therapies such as a filter inserted in the vena cava vein to catch blood clots, and graduated compression stockings. See National Heart, Lung, and Blood Institute website, *http://www.nhlbi.nih.gov/health/health-topics/topics/dvt/* (last visited Sept. 22, 2014).

there was no objective evidence of a mental impairment. [AR 14]. The ALJ further noted that no treating physician imposed work restrictions other than a February 2012 recommendation that plaintiff keep his legs elevated due to possible cellulitis, without evidence that any cellulitis lasted for at least 12 consecutive months. [AR 14]. The ALJ did not order any consultative examination. He rejected as unsupported by the record the opinion of Dr. Chiang, a non-examining state agency physician who concluded that plaintiff had severe impairments limiting him to light work with postural and environmental limitations. [AR 14].

Plaintiff contends that substantial evidence in the record supports the conclusion that plaintiff's impairments are severe. Plaintiff points to his four hospitalizations between August 2007 and February 2008, including an 11-day hospitalization (from December 31, 2007 through January 10, 2008) that the ALJ failed to mention, and his additional hospitalization in January 2012. [JS 3 (citing AR 239-241, 254, 279-288, 297, 352, 469)]. Plaintiff points to evidence that he is "followed closely" in the rheumatology clinic with complaints of fever, night sweats, fatigue, and lymphadenopathy. [JS 4 (citing AR 378, 382-383, 386-439, 445)]. Plaintiff further notes that the state agency physician limited plaintiff to light work. [JS 4 (citing AR 364)]. Plaintiff also cites his testimony that he elevates his feet daily for about 45 minutes to reduce pain and swelling. [JS 4].

It is undisputed that plaintiff was diagnosed with and repeatedly hospitalized for Wegener's and DVT in late 2007 and early 2008, and again in 2012, and that those diagnoses remained unchanged through the date of the hearing in 2012. The ALJ did not suggest that plaintiff's condition was not severe immediately before, during, or after his four hospital stays, the first three of which occurred over the course of period of about five months. On discharge from his third hospitalization in February 2008, his condition was "[i]mproving," and his prognosis was "[r]ecovery is expected." [AR 280]. Plaintiff received ongoing follow-up evaluation and treatment at Veterans' Administration ("VA") facilities, where he was seen not only by his primary care doctor but by rheumatology, pulmonary, opthamology, neurology, physical medicine, and ear, nose, and throat specialists. Plaintiff's VA records include numerous additional diagnoses or assessments for which he received outpatient evaluation and treatment through March 2012, including hyperlipidimia; acute kidney failure, unspecified; hyperkalemia (high blood potassium); elevated liver function tests; shortness of breath; allergic rhinitis; acute sinusitis; pain in joint involving shoulder region; preglaucoma; orthostatic hypotension; rectal bleeding; pneumonia; neutropenia; polydypsia;

4

polyuria; hypoglycemia; gastroenteritis; insomnia; cellulitis; and mild cognitive impairment. Plaintiff's subjective complaints to his VA providers during this period (in addition to the acute symptoms that led to his hospital admissions) included dizziness, light-headedness, nausea, tiredness, weakness, shakiness, lack of appetite, excessive urination, nocturia, polydypsia, cramps and stiffness on rising in the morning, pain, swelling, stiffness, and range of motion limitations in the bilateral shoulders, hands, legs, and feet, abdominal pain, shortness of breath on exertion, pressure in eye area, productive cough, nasal congestion, runny nose, postnasal drip, fever, muscle ache, tingling and numbness in hands and feet, insomnia, feeling "down," and short term memory loss. Plaintiff was prescribed multiple medications, including prednisone and immunosuppressant drugs (Cytoxan (cyclophosphamide) and Cellept (mycophenolate mofetil)) for Wegener's; chronic Lovenox (enoxaparin) injection therapy for DVT; tramodol for pain[3], and numerous medications to treat his upper respiratory symptoms. He also underwent a course of physical therapy for right shoulder pain. [See AR 229-254, 273-279, 282-286, 292-358, 372-390, 451-495]. Abnormal examination or test findings during non-hospital visits included joint swelling [AR 236, 297, 378], low pulse [AR 235], post nasal drip [AR 239], joint tenderness, stiffness, and range of motion limitations [AR 240, 297, 325, 452, 486], cataracts [AR 242-248], mild instability in the right shoulder and positive apprehension sign with abduction and external rotation in the right shoulder [AR 250, 314, 325], chronic DVT bilaterally with swelling [AR 252, 254], low blood glucose (hypoglycemia) [AR 305], and abnormalities of the sinuses [AR 375, 388, 471].

In Webb, the Ninth Circuit held that the ALJ erred in finding "no severe impairment or combination of impairments despite objective medical evidence demonstrating back pain, hypertension, knee pain, hip pain, visual disturbances, memory loss, diverticulitis, lack of sleep, difficulty performing physical tasks and lack of employment" for six years, notwithstanding gaps in the claimant's treatment history. Webb, 433 F.3d at 687. Analogizing to Webb, the record before the ALJ in this case "includes evidence of problems sufficient to pass the de minimis threshold of step two" and is distinguishable from cases in which there was

---

[3] Tramadol is in a class of medications called opiate analgesics and is used to relieve moderate to moderately severe pain. See PubMed Health website, United States National Library of Medicine, *http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0012486/* (last visited Sep. 25, 2014).

a "total absence of objective evidence of [a] severe impairment." <u>Webb</u>, 433 F.3d at 687, 688.

      The ALJ focused on evidence that plaintiff's Wegener's and DVT were described as "stable," that certain diagnostic test results were within normal limits, and that plaintiff reported exercising after being advised to do so.  However, substantial evidence does not support the ALJ's finding that plaintiff's impairments are not severe, either singly or in combination.  As noted above, evidence that plaintiff's complex chronic conditions were "stable" or "improving," without more, does not necessarily mean that those impairments are no more than a "slight abnormality," as required to terminate the sequential evaluation procedure at step two.  <u>Smolen</u>, 80 F.3d at 1289-1290; <u>see</u> <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1205 (9th Cir.2001) (holding that the ALJ erred in selectively relying on the treating physician's notes, and explaining that a treating physician's "statements must be read in context of the overall diagnostic picture he draws") (citing <u>Kellough v. Heckler</u>, 785 F.2d 1147, 1153 (4th Cir. 1986) ("'Feels well' and 'normal activity' must be read in context; the claimant has established that she suffered a severe cardiac impairment in 1975. A note entered in November 1975, just one month before she was hospitalized for open heart surgery, also stated that she 'feels well.' [the claimant] testified without contradiction that her 'normal activity' following her surgery was very limited.")).

      Here, the only physician to assess plaintiff's RFC, Dr. Chiang, opined that plaintiff's impairments were severe and limited him to light work with occasional postural limitations and the need to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. [<u>See</u> AR 363-369].  The ALJ rejected Dr. Chiang's uncontroverted opinion without articulating clear and convincing reasons for doing so.  <u>See</u> <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007). The ALJ rejected Dr. Chiang's opinion as not consistent with the objective clinical findings, but as noted above, the objective and clinical evidence in the record is sufficient to "pass the de minimis threshold of step two." <u>Webb</u>, 433 F.3d at 687.  The ALJ faulted Dr. Chiang for citing plaintiff's subjective complaints of "joint pain, [gastrointestinal] problems, and fatigue" as evidence supporting his opinion in spite of plaintiff's "unremarkable" physical examination. [AR 364].  However, the record indicates that plaintiff's VA physicians found his subjective symptoms credible for purposes of diagnosis and treatment. [<u>See, e..g</u>, AR 314-317, 322-326 (x-ray and referral to physical therapy for shoulder pain); 455-457 (diagnosis and treatment based on complaints of shoulder pain;

AR 239, 295, 461, 466, 491(prescription and renewal of tramadol for ongoing pain complaints); AR 468 (plaintiff described as a "good historian"; MRI ordered for complaints of short term memory problems notwithstanding normal mental status examination for age); AR 470-470-471 (diagnosis and treatment for multiple complaints); AR 490-492 (pulmonary function test ordered in response to complaints of "'feeling short-winded' on occasion")]. See Webb, 433 F.3d at 688 (holding that the ALJ erred in rejecting the claimant's subjective complaints at step two where there was "no inconsistency between [the claimant's] complaints and his doctors' diagnoses sufficient to doom his claim as groundless under the de minimis standard of step two. [The claimant's] clinical records did not merely record the complaints he made to his physicians, nor did his physicians dismiss [those] complaints as altogether unfounded.").

The ALJ also rejected Dr. Chiang's opinion because no "treating or examining physician" prescribed work restrictions, but since the record does not contain any treating or examining source opinion and the ALJ did not order a consultative examination, there is no material conflict or inconsistency between Dr. Chiang's opinion and the treating and examining source opinion evidence. The most that can be said is that the record is incomplete in this respect, and that the ALJ had an affirmative to develop the record before relying on the absence of treating or examining source restrictions. See Webb, 433 F.3d at 687 (holding that where the medical evidence "paints an incomplete picture of [the claimant's] overall health during the relevant period," the ALJ had an "affirmative duty to supplement [the] medical record, to the extent it was incomplete, before rejecting [the claimant's] petition at so early a state in the analysis").

For these reasons, the ALJ erred in evaluating the medical evidence at step two of the sequential evaluation and in failing adequately to develop the record, and those errors also tainted the ALJ's evaluation of the credibility of plaintiff's subjective complaints at step two.[4] Substantial evidence does not support the ALJ's finding that plaintiff's physical impairments are not severe, singly or in combination.

Because there are outstanding issues that must be resolved at subsequent steps of the sequential evaluation procedure, a remand for additional administrative proceedings is the appropriate remedy. On remand, the Commissioner shall direct the ALJ to conduct a supplemental hearing, take appropriate steps

---

[4] This conclusion makes it unnecessary to separately consider plaintiff's contentions with respect to the ALJ's credibility assessment.

to develop the record, and issue a new decision containing the required findings. See geneally Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000).

## Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and contains legal error. Accordingly, the Commissioner's decision is **reversed and remanded for further administrative proceedings.**

**IT IS SO ORDERED.**

September 25, 2014

_____
ANDREW J. WISTRICH
United States Magistrate Judge